# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JACQUELINE CASTILLO,                    )
                                        )
                Plaintiff,          )
                                        )
        vs.                      )
                                        )    No.
CHICAGO POLICE LIEUTENANT CONROY,       )
Star No. 267, and UNKNOWN               )
CHICAGO POLICE OFFICERS, and            )
CITY OF CHICAGO, ILLINOIS,              )
                                        )
             Defendants.          )

**08 C 384**

**JUDGE GRADY**
**MAGISTRATE JUDGE VALDEZ**

**JURY TRIAL DEMANDED**


## COMPLAINT AND JURY DEMAND

Now comes Plaintiff, JAQUELINE CASTILLO, ("Plaintiff"), by and through her attorney, Jeffrey B. Granich, and makes the following complaint against Defendant CHICAGO POLICE LIEUTENANT CONROY and UNKNOWN CHICAGO POLICE OFFICERS, ("Defendant Officers"), and the CITY OF CHICAGO, ILLINOIS, ("Defendant City"):


## JURISDICTION and VENUE

1.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2.     This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.     Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4.     At all relevant times, Plaintiff was a 41 year-old female resident of Chicago, Illinois.

5.     At all relevant times, Defendant Conroy and the other unknown Defendant Officers were Police Officers for the City of Chicago and were acting under the color of the law and within the scope of their employment.

6.     Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant Officers.

## Factual Allegations

7.     In August, 2007, Plaintiff, lived in an apartment located at 3228 W. Wabansia, Chicago, Illinois 60647, on the first floor of the Coach House, with her 15 year old son and their two dogs, Max and Karma.

8.     The coach house in which Plaintiff and her family lived was separated into two distinct apartments, with separate front and back entries, separate mailboxes, separate utilities and no access between the two units from the inside of the coach house.

9.     On the afternoon of August 22, 2007, Plaintiff was at work when she learned that one or more of the Defendant Officers had forced their way into her home and shot and killed her two dogs, Max and Karma.

10.    Plaintiff immediately went home but when she got there, Defendant Officers would not allow her into her own home.

11.    The Chicago Department of Streets and Sanitation arrived at Plaintiff's home and removed her dogs' bodies, after which Plaintiff was permitted to enter her home.

12.    Upon entering her home, Plaintiff observed blood from her dogs all over her apartment, including spattered blood on the walls and even inside her son's bedroom.

13.    Plaintiff also observed approximately 16 bullet holes inside her home as well as additional extensive property damage to her apartment and belongings due to the actions of Defendant Officers.

14.    Due to Defendant Officers' unauthorized entry into her home and their subsequent killing of her two beloved pets, Plaintiff and her son have suffered

extensive emotional and property damages as well as the loss of the dogs themselves.

## Count I – 42 U.S.C. § 1983 Unlawful Search

15.     Plaintiff re-alleges paragraphs 1 through 14 as if fully repleaded here.

16.     Defendant Officers entered and searched Plaintiff's home on August 22, 2007, even though Defendant Officers did not have any justifiable basis for the entry and/or search and lacked probable cause, in violation of Plaintiff's rights under the 4th Amendment to the United States Constitution.

17.     The aforementioned actions of Defendant Officers and Defendant Conroy proximately caused Plaintiff to be deprived of her 4th Amendment right to be free from unlawful searches to which probable cause did not exist.

18.     As a direct and proximate result of this illegal entry, search, and seizure, Plaintiff has suffered extensive damages, including but not limited to: property and emotional damages and other damages which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Officers, and Defendant City in a fair and just amount sufficient to compensate her for the injuries she suffered, plus, Plaintiff seeks a substantial sum in punitive damages against Defendant Conroy and Defendant Officers, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count II – 42 U.S.C. § 1983 – Unlawful Seizure

19.     Plaintiff re-alleges paragraphs 1 through 14 as if fully repleaded here.

20.     On August 22, 2007, Defendant Officers unlawfully seized Plaintiff's personal property (her dogs), when they intentionally shot and killed them without lawful justification, in violation of the Fourth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment.

21.     As a result of Defendant Officers actions, Plaintiff has lost her pets and suffered severe emotional and property damages.

WHEREFORE, Plaintiff prays for judgment against Defendant Officers in a fair and just amount sufficient to compensate her for the injuries she suffered and

continues to suffer, plus, Plaintiff seeks a substantial sum in punitive damages against Defendant Officers, as well as costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count III:  Unlawful Search & Seizure Policy Claim

22.     Plaintiff re-alleges paragraphs 1 through 14 as if fully repleaded here.

23.     The misconduct described above was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.     As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

b.     As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c.     As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.     Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e.     The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.    As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.    As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h.    The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

## Count V – Intentional Infliction of Emotional Distress

24.    Plaintiff re-alleges paragraphs 1 through 14 as if fully repleaded here.

25.    As more fully described above, Defendant Officers actions in forcing their way into Plaintiff's home and shooting the family dogs was extreme and outrageous.

26.    Defendant Officers acted willfully and wantonly in that they intended, or were recklessly indifferent towards, causing Plaintiff severe emotional distress, knowing that there was a high probability that breaking into her home and shooting her two dogs would cause her severe emotional distress and mental anguish.

27.    As a direct and proximate result of Defendant Officers' misconduct, Plaintiff in fact, has suffered severe emotional distress.

28.    Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

29.    At all relevant times, Defendant Officers were agents of Defendant City and employees of the Chicago Police Department acting within the scope of their employment.  Defendant City, therefore, is liable as principal for all torts committed by its agents, Defendant Officers.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate her for the injuries she suffered, plus, Plaintiff seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

JAQUELINE CASTILLO,
Plaintiff,

By: /s/ Jeffrey B. Granich
      Jeffrey B. Granich
      Attorney for Plaintiff

Jeffrey B. Granich
53 W. Jackson Blvd.
Suite 840
Chicago, IL 60604
A.R.D.C. No. 6207030
(312) 939-9009