UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE CASTILLO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 384 |
| | ) | |
| vs. | ) | |
| | ) | |
| CHICAGO POLICE LIEUTENANT CONROY, | ) | Judge Grady |
| Star No. 267, and UNKNOWN | ) | |
| CHICAGO POLICE OFFICERS, and | ) | Magistrate Judge Valdez |
| CITY OF CHICAGO, ILLINOIS, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**DEFENDANT CONROY'S ANSWER, AFFIRMATIVE DEFENSES,
AND JURY DEMAND TO PLAINTIFF'S COMPLAINT.**

Defendant Chicago Police Lieutenant Patrick Conroy ("Defendant Conroy"), by one of his attorneys, Marcy M. Labedz, Assistant Corporation Counsel, hereby submits his Answer, Affirmative Defenses, and Jury Demand to Plaintiff's Complaint, and in support thereof state as follows[1]:

**JURISDICTION and VENUE**

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs rights as secured by the United States Constitution.

**ANSWER:** Defendant Conroy admits this action is brought pursuant to 42 U.S.C. §1983, but denies the remaining allegations and complained of conduct contained in Paragraph 1.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

**ANSWER:** Defendant Conroy admits this Court has jurisdiction over this matter, but denies any wrongful or illegal conduct contained in Paragraph 2.

---

[1] Defendant Conroy answers this complaint on his own behalf. Defendant Conroy makes no answer on behalf of the City of Chicago, nor on behalf of unknown Chicago Police Officers.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

**ANSWER:** Defendant Conroy admits venue is proper, and that the events giving rise to the allegations occurred within this district. Defendant Conroy denies any wrongful or illegal conduct contained in Paragraph 3.

## PARTIES

4. At all relevant times, Plaintiff was a 41 year-old female resident of Chicago, Illinois.

**ANSWER:** Upon information and belief, Defendant Conroy admits that on August 22, 2007 Plaintiff was a resident of Chicago, Illinois. Further, Defendant Conroy admits that Plaintiff is female. Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.

5. At all relevant times, Defendant Conroy and the other unknown Defendant Officers were Police Officers for the City of Chicago and were acting under the color of the law and within the scope of their employment.

**ANSWER:** Defendant Conroy admits that on August 22, 2007 at approximately 14:45 hours, he was a Chicago Police Officer, was acting under the color of the law, and within the scope of his employment. Defendant Conroy denies any wrongful or illegal conduct contained in Paragraph 5. Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5.

6. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant Officers.

**ANSWER:** Defendant Conroy admits that Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is Defendant Conroy's

employer and principal. Defendant Conroy denies any complained of conduct contained in Paragraph 6.

### Factual Allegations

7. In August, 2007, Plaintiff, lived in an apartment located at 3228 W. Wabansia, Chicago, Illinois 60647, on the first floor of the Coach House, with her 15 year old son and their two dogs, Max and Karma.

**ANSWER:** Upon information and belief, Defendant Conroy admits that on August 22, 2007 Plaintiff lived in an apartment located at 3228 W. Wabansia, Chicago, Illinois 60647, on the first floor of the coach house with her son and their two dogs. Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 7.

8. The coach house in which Plaintiff and her family lived was separated into two distinct apartments, with separate front and back entries, separate mailboxes, separate utilities and no access between the two units from the inside of the coach house.

**ANSWER:** Upon information and belief, Defendant Conroy admits that on August 22, 2007 Plaintiff lived in an apartment located at 3228 W. Wabansia, Chicago, Illinois 60647, on the first floor of the coach house, with a separate back entrance. Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8.

9. On the afternoon of August 22, 2007, Plaintiff was at work when she learned that one or more of the Defendant Officers had forced their way into her home and shot and killed her two dogs, Max and Karma.

**ANSWER:** Upon information and belief, Defendant Conroy admits that on August 22, 2007, Plaintiff was at work. Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9.

10. Plaintiff immediately went home but when she got there, Defendant Officers would not allow her into her own home.

**ANSWER:** Defendant Conroy admits that Plaintiff came to 3228 W. Wabansia in Chicago, and that she was not allowed into the apartment immediately. Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10.

11. The Chicago Department of Streets and Sanitation arrived at Plaintiff's home and removed her dogs' bodies, after which Plaintiff was permitted to enter her home.

**ANSWER:** Defendant Conroy admits the allegations contained in Paragraph 11, but denies the sequence of events.

12. Upon entering her home, Plaintiff observed blood from her dogs all over her apartment, including spattered blood on the walls and even inside her son's bedroom.

**ANSWER:** Defendant Conroy admits that Plaintiff entered her home. Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12.

13. Plaintiff also observed approximately 16 bullet holes inside her home as well as additional extensive property damage to her apartment and belongings due to the actions of Defendant Officers.

**ANSWER:** Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14. Due to Defendant Officers' unauthorized entry into her home and their subsequent killing of her two beloved pets, Plaintiff and her son have suffered extensive emotional and property damages as well as the loss of the dogs themselves.

**ANSWER:** Defendant Conroy admits that two dogs were shot and the back door was damaged. Defendant Conroy denies the remaining allegations contained in Paragraph 14.

## Count I-42 U.S.C. S 1983 Unlawful Search

15.     Plaintiff re-alleges paragraphs 1 through 14 as if fully repleaded here.

**ANSWER:**     Defendant Conroy re-asserts his answers to paragraphs 1-14, as his answer to paragraph 15 of Count I.

16.     Defendant Officers entered and searched Plaintiff's home on August 22, 2007, even though Defendant Officers did not have any justifiable basis for the entry and/or search and lacked probable cause, in violation of Plaintiffs rights under the 4th Amendment to the United States Constitution.

**ANSWER:**     Defendant Conroy admits that he entered Plaintiff's home on August 22, 2007. Defendant Conroy denies the remaining allegations contained in Paragraph 16.

17.     The aforementioned actions of Defendant Officers and Defendant Conroy proximately caused Plaintiff to be deprived of her 4th Amendment right to be free from unlawful searches to which probable cause did not exist.

**ANSWER:**     Defendant Conroy denies the allegations and complained of conduct contained in Paragraph 17.

18.     As a direct and proximate result of this illegal entry, search, and seizure, Plaintiff has suffered extensive damages, including but not limited to: property and emotional damages and other damages which will be proven at trial.

**ANSWER:**     Defendant Conroy denies the allegations and complained of conduct contained in Paragraph 18.

**WHEREFORE,** Defendant Conroy respectfully requests that judgment be entered in his favor and against Plaintiff on Count I, for the costs of defending this suit, and other such relief as the Court deems just and appropriate.

### Count II- 42 U.S.C. § 1983 -Unlawful Seizure

19. Plaintiff re-alleges paragraphs 1 through 14 as if fully repleaded here.

**ANSWER:** Defendant Conroy re-asserts his answers to paragraphs 1-14, as his answer to paragraph 19 of Count II.

20. On August 22, 2007, Defendant Officers unlawfully seized Plaintiff's personal property (her dogs), when they intentionally shot and killed them without lawful justification, in violation of the Fourth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment.

**ANSWER:** Defendant Conroy denies the allegations and complained of conduct contained in Paragraph 20.

21. As a result of Defendant Officers actions, Plaintiff has lost her pets and suffered severe emotional and property damages.

**ANSWER:** Defendant Conroy denies the allegations and complained of conduct contained in Paragraph 21.

**WHEREFORE,** Defendant Conroy respectfully requests that judgment be entered in his favor and against Plaintiff on Count II, for the costs of defending this suit, and other such relief as the Court deems just and appropriate.

### Count III: Unlawful Search & Seizure Policy Claim

22. Plaintiff re-alleges paragraphs 1 through 14 as if fully repleaded here.

**ANSWER:** Defendant Conroy re-asserts his answers to paragraphs 1-14, as his answer to paragraph 22 of Count III.

23. The misconduct described above was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

    a. As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to

|   |   |
|---|---|
|   | adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference; |
| b. | As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing; |
| c. | As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases; |
| d. | Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case; |
| e. | The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here; |
| f. | As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career; |
| g. | As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained". and |
| h. | The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights. |

**ANSWER:** Defendant Conroy denies the allegations and complained of conduct contained in Paragraph 23.

**WHEREFORE,** Defendant Conroy respectfully requests that judgment be entered in his favor and against Plaintiff on Count III, for the costs of defending this suit, and other such relief as the Court deems just and appropriate.

### Count V [sic] -Intentional Infliction of Emotional Distress

24.     Plaintiff re-alleges paragraphs 1 through 14 as if fully repleaded here.

**ANSWER:**     Defendant Conroy re-asserts his answers to paragraphs 1-14, as his answer to paragraph 24 of Count V[2].

25.     As more fully described above, Defendant Officers actions in forcing their way into Plaintiff's home and shooting the family dogs was extreme and outrageous.

**ANSWER:**     Defendant Conroy denies the allegations and complained of conduct contained in Paragraph 25.

26.     Defendant Officers acted willfully and wantonly in that they intended, or were recklessly indifferent towards, causing Plaintiff severe emotional distress, knowing that there was a high probability that breaking into her home and shooting her two dogs would cause her severe emotional distress and mental anguish.

**ANSWER:**     Defendant Conroy denies the allegations and complained of conduct contained in Paragraph 26.

27.     As a direct and proximate result of Defendant Officers' misconduct, Plaintiff in fact, has suffered severe emotional distress.

**ANSWER:**     Defendant Conroy denies the allegations and complained of conduct contained in Paragraph 27.

28.     Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

---

[2]There is no Count IV in Plaintiff's Complaint.

**ANSWER:** Defendant Conroy makes no answer to Paragraph 28 since it is directed to the City of Chicago. To the extent that an answer is required, Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28.

29. At all relevant times, Defendant Officers were agents of Defendant City and employees of the Chicago Police Department acting within the scope of their employment. Defendant City, therefore, is liable as principal for all torts committed by its agents, Defendant Officers.

**ANSWER:** Defendant Conroy admits that on August 22, 2007 he was an employee of the Chicago Police Department, acting within the scope of his employment, and the City may be liable as principal. Defendant Conroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 29.

**WHEREFORE,** Defendant Conroy respectfully requests that judgment be entered in his favor and against Plaintiff on Count V, for the costs of defending this suit, and other such relief as the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE: QUALIFIED IMMUNITY

Defendant Conroy is a government official, namely a police officer, who performs discretionary functions. At all times material to the events alleged in Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted Defendant Conroy could have believed his actions to be lawful, in light of clearly established law and the information that Defendant Conroy possessed. Therefore, Defendant Conroy is entitled to qualified immunity as a matter of law.

**SECOND AFFIRMATIVE DEFENSE:**
**STATE COMPARATIVE AND CONTRIBUTORY NEGLIGENCE LAW STATE**

Any injuries or damages claimed by the Plaintiff against Defendant Conroy were caused, in whole or in part, by negligent, willful and wanton, and intentional conduct of the Plaintiff. Even if Defendant Conroy was liable in damages, the total amount of damages to which Plaintiff would otherwise be entitled must be reduced by application of principles of comparative fault in proportion to the amount of the negligent, willful and wanton and intentional conduct of Plaintiff which were the proximate cause of his injuries. In addition, at the time of the actions alleged in Plaintiff's Complaint, Illinois statute 735 ILCS 5/2-1116 (West 2004) was in effect and reduces a Plaintiff's recovery according to his contributory negligence and bars his recovery entirely when a Plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

**THIRD AFFIRMATIVE DEFENSE:**
**STATE TORT IMMUNITY ACT 745 ILCS 10/2-202**

Defendant Conroy was working as a police officer at the time of this incident. Therefore, as to all claims, under the Illinois Tort Immunity Act, Defendant Conroy is not liable for any of the claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202 (West 2004).

**FOURTH AFFIRMATIVE DEFENSE:**
**STATE TORT IMMUNITY ACT 745 ILCS 10/2-204**

Defendant Conroy is liable for any of Plaintiffs' alleged claims because a public employee, as such and acting within the scope of his/her employment, is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204 (West 2004).

### FIFTH AFFIRMATIVE DEFENSE:
### MITIGATION OF DAMAGES

To the extent Plaintiff failed to mitigate any of her claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff has a duty to mitigate her damages, commensurate with the degree of failure to mitigate attributed to Plaintiff by a jury in this case.

### CONCLUSION

**WHEREFORE,** Defendant Conroy respectfully request that judgment be entered in his favor and against the Plaintiff, for the costs of defending this suit, and other such relief as the Court deems just and appropriate.

### JURY DEMAND

Defendant Conroy hereby demands a jury trial for all issues so triable.

Respectfully submitted,

/s/ Marcy M. Labedz
MARCY M. LABEDZ
Assistant Corporation Counsel

30 N. LaSalle Street
Suite 1400
Chicago, Illinois 60602
(312) 744-3982
(312) 744-6566 (Fax)
Atty. No. 06279219

May 30, 2008

11

## CERTIFICATE OF SERVICE

I, Marcy M. Labedz, hereby certify that I have caused a true and correct copy of the above and foregoing **NOTICE OF FILING** and **DEFENDANT CONROY'S ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND TO PLAINTIFF'S COMPLAINT** to be sent via e-filing to the persons named in the foregoing Notice, "Filing Users" pursuant to Case Management/Electronic Case Files, on May 30, 2008, in accordance with the rules of electronic filing.

/s/ Marcy M. Labedz
MARCY M. LABEDZ